# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDA C. FULTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-300-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Linda C. Fulton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 20, 1955, and was fifty-nine years old at the time of the administrative hearing (Tr. 42). She has a high school equivalent education, and has worked as a security guard (Tr. 43, 53). The claimant alleges that she has been unable to work since February 26, 2012, due to depression, H. pylori, ulcers, leg cramps, and pain in her hips, back, neck, legs and arms (Tr. 47, 217).

## Procedural History

On August 2, 2012, the claimant applied for disability insurance benefits and disabled widow's benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 185-92). Her applications were denied. ALJ Doug Gabbard, II conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated January 30, 2015 (Tr. 16-30). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of

3

light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 24). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a security guard (Tr. 30).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) consider her non-severe affective disorder, and (ii) analyze the opinions of treating physician Dr. Rick Robbins. The Court agrees with the claimant's second contention, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant's degenerative disc disease of the back and osteoarthritis were severe impairments, but that her weight loss, hypertension, H. pylori, bilateral carpal tunnel release, cervical fusion surgeries, headaches, leg cramps, and affective disorder were non-severe (Tr. 20-22). The medical evidence relevant to this appeal reveals that Dr. Robbins regularly treated the claimant between February 2013 and August 2014 (Tr. 479-515). Physical, neurological, and neuropsychiatric examinations at these appointments were consistently normal, and the claimant's diagnoses included, *inter alia*, back pain, hip pain, arthralgia, hypertension, cephalgia, degenerative joint disease, dizziness, tension headache, leg cramps, gastroesophageal reflux disease, and depression (Tr. 479-515). February 2013 x-rays of the claimant's lumbar spine revealed mild degenerative disc disease at T12 through L2, and retrolisthesis of L1 on L2, L2 on L3, and L3 on L4 (Tr. 482). X-rays of the claimant's cervical spine revealed degenerative disc space narrowing at C4-5 and C5-6, anterior and posterior osteophytosis

4

at C5-6, fusion of the C6-7 vertebral body, and unremarkable prevertebral soft tissues (Tr. 484). The claimant's hip x-rays were normal (Tr. 483, 485).

On June 24, 2013, Dr. Robbins completed a Medical Source Statement-Physical ("MSSP") wherein he opined that the claimant could occasionally lift/carry less than ten pounds; stand/walk less than two hours out of an eight-hour workday for fifteen to thirty minutes continuously; sit less than two hours out of an eight-hour workday for thirty minutes continuously; needed to lie down during the normal workday to manage pain and other symptoms; and could never climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, or feel (Tr. 498-99). Dr. Robbins also indicated the claimant was limited in her ability to push/pull, and had environmental restrictions, but these descriptions are illegible (Tr. 499). As support for his opinion, Dr. Robbins referenced the claimant's headaches, degenerative disc disease, and shoulder, back, and hip pain (Tr. 499). Dr. Robbins indicated his descriptions of the claimant's limitations were applicable from February 7, 2013, through June 24, 2013 (Tr. 499). Additionally, the record contains an undated MSSP from Dr. Robbins which is similar to his June 2013 MSSP and applicable from "2013 to present." (Tr. 506).

Dr. Robbins also completed a Mental Functional Assessment Questionnaire on June 24, 2013, wherein he indicated the claimant's inability to be around children and fall asleep, as well as the fact that she "wakes up a lot in the night," led to her diagnosis of depression with tension headache (Tr. 492). Dr. Robbins described the claimant's functional limitations related to her mental impairments as "can't follow instructions, forgets easily, can't finish tasks." (Tr. 492).

Medical opinions of a treating physician such as Dr. Robbins are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301, so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight," *id*. at 1300.

The ALJ gave little weight to Dr. Robbins' opinions concerning the claimant's work-related limitations for the following reasons: (i) his treatment notes did not reflect treatment for the claimant's for mental impairments; (ii) his opinions were inconsistent with his own treatment notes, other treating physicians' reports, the medically acceptable clinical and laboratory diagnostic techniques and tests, other substantial evidence, the claimant's admissions and testimony, and the record as a whole; (iii) he treated the claimant for little more than a year; (iv) he is not a mental health specialist, neurologist, or orthopedist; (v) his conservative treatment was inconsistent with what would be expected if the claimant were truly disabled; and (vi) it was probable that Dr. Robbins' opinions were based on sympathy or made in an effort to satisfy the claimant's demands and avoid doctor/patient tension (Tr. 26-28). The ALJ's analysis is legally deficient for several reasons.

First, although the ALJ referred to specific evidence when discussing the inconsistencies between Dr. Robbins' opinion and the evidence of record, he minimized or mischaracterized much of it. For example, the ALJ stated that Dr. Robbins' treatment notes did not reflect treatment for the claimant's mental impairments, but several notes do show an active prescription for anti-depressant medication, and one note specifically includes a diagnosis of depression (Tr. 501, 507, 509, 511-12). Similarly, the ALJ stated that the claimant's February 2013 lumbar x-ray showed only mild degenerative disease, when it also showed retrolisthesis at several levels, and he stated that her cervical x-ray showed degenerative discs and fusion, when it also showed anterior and posterior osteophytosis at C5-6 (Tr. 27, 482, 484). Lastly, in discussing Dr. Robbins' course of

treatment, the ALJ stated Dr. Robbins never recommended injections, but treatment notes dated March 2014 and June 2014 reflect that steroid injections were in fact administered (Tr. 510, 515). This is improper picking and choosing. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").

Next, the ALJ substituted his own medical opinion for that of Dr. Robbins when he stated that Dr. Robbins did not recommend the types of medical treatments one would expect if the claimant were truly disabled (Tr. 27). *See Miller v. Chater,* 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services,* 10 F.3d 739, 743 (10th Cir. 1993) *and Kemp v. Bowen,* 816 F.2d 1469, 1475 (10th Cir. 1987).

Finally, it was clearly improper for the ALJ to reject Dr. Robbins' opinions upon speculation that he sympathized with the claimant "for one reason or another," or provided his opinion to satisfy the claimant's requests and avoid doctor/patient tension (Tr. 28). *See, e. g., Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected [the treating physician's] opinion based upon his own speculative conclusion that the report . . . was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for

8

. . . these findings. Nothing in [the treating physician's] reports indicates . . . that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [emphasis in original].

Because the ALJ failed to properly evaluate the opinions of the claimant's treating physician, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis. On remand, the ALJ should evaluate Dr. Robbins' opinion in accordance with the appropriate standards and determine what impact such evaluation has on the claimant's RFC and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**